Louis Pechman (LP-6395)
Berke-Weiss & Pechman LLP
488 Madison Avenue
New York, New York 10022
(212) 583-9500
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WAYNE WALKER, SAYED KHALIL,
and BRIAN LAHOFF,

       Plaintiffs,    COMPLAINT

  -against-        DEMAND FOR TRIAL
            BY JURY

THE ORIGINAL HOMESTEAD RESTAURANT,
INC., d/b/a OLD HOMESTEAD, GREGORY  ECF CASE
SHERRY, MARC SHERRY, and LUIS ACOSTA,

       Defendants.
------------------------------------------------------------X

  Plaintiffs Wayne Walker, Sayed Khalil, and Brian LaHoff (collectively referred to herein as "plaintiffs"), by their attorneys, Berke-Weiss & Pechman LLP, complaining of defendants The Original Homestead Restaurant, Inc., d/b/a Old Homestead ("Old Homestead"), Gregory Sherry, Marc Sherry, and Luis Acosta, (collectively referred to herein as "defendants") allege:

## NATURE OF THE ACTION

  1. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York State Labor Law § 190, *et seq.* ("NYLL").

  2. In response to an FLSA and NYLL lawsuit filed by plaintiffs and other former waiters at Old Homestead, defendants have engaged in a campaign of

intimidation, threats, and coercion, and have retaliated against waiters Wayne Walker, Sayed Khalil, and Brian LaHoff, who exercised their rights to initiate a lawsuit to recover tips and unpaid wages that they have been cheated out of by Old Homestead.

## JURISDICTION

3. This Court has subject matter jurisdiction over this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiffs' claims under the New York State Labor Law pursuant to 28 U.S.C. §§ 1332 and 1367.

## VENUE

4. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 as the location of Old Homestead is in the Southern District of New York.

## THE PARTIES

5. Sayed Khalil ("Khalil") resides in Bellerose, New York. He has been employed as a waiter at Old Homestead since 1980.

6. Wayne Walker ("Walker") resides in New York, New York. He has been employed as a waiter at Old Homestead since 2002.

7. Brian LaHoff ("LaHoff") resides in Jersey City, New Jersey. He has been employed as a waiter at Old Homestead since 2003.

8. Defendant The Original Homestead Restaurant, Inc. is a New York corporation which owns and operates Old Homestead, a restaurant located at 56 Ninth Avenue, New York, New York, 10011.

9. Defendant Gregory Sherry resides in West Orange, New Jersey. He is an owner and the Chief Executive Officer of Old Homestead, and, at all times material herein, established and had authority regarding the employment practices at Old Homestead.

2

10. Defendant Marc Sherry resides in Marlboro, New Jersey. He is an owner of Old Homestead, and, at all times material herein, established and had authority regarding the employment practices at Old Homestead.

11. Defendant Luis Acosta ("Acosta") resides in Jersey City, New Jersey. At all times material herein, he was the General Manager at Old Homestead, with authority to hire, terminate, assign, and schedule employees, to extend credit on behalf of Old Homestead, and to establish employment practices at Old Homestead.

## FACTS

12. On January 30, 2007, the case of *Sayed Khalil, et al. v. The Original Homestead Restaurant, Inc., d/b/a Old Homestead, et al.*, 07 Civ. 695 (RJH), was filed in the United States District Court, Southern District of New York (the "FLSA Lawsuit") to recover unpaid minimum wages, unlawfully expropriated tips, and unpaid overtime wages under the FLSA and the NYLL.

13. In response to the FLSA Lawsuit, Old Homestead's management and owners engaged in a campaign of retaliation, intimidation and disparate treatment toward waiters who joined the FLSA Lawsuit, designed to cause plaintiffs to quit their jobs as waiters at Old Homestead.

14. Since the filing of the FLSA Lawsuit, Old Homestead has consistently assigned the plaintiffs traditionally less-desirable customers, such as customers from European countries where tipping is not customary, customers with young children, and customers who inform the maitre d' they plan to share entrees or will only be ordering dessert or coffee.

15. Since the filing of the FLSA Lawsuit, plaintiffs have also been given fewer customers in each shift. Whereas prior to the FLSA Lawsuit, plaintiffs had received the earliest customers and large parties, and had their stations full by 6:00 p.m., plaintiffs

3

now begin receiving their first customers as late as 9:00 p.m. or later, several hours after their shifts start. The extraordinary discrepancy in table assignments has taken on absurd proportions. Some recent examples are as follows:

- On June 26, 2008, Khalil and Walker worked together. Khalil asked if their team would be alternating tables in the adjacent café with Jose Lara and Louis B., the other team in their room. Acosta responded that the café was closed. Later, customers were seated in the café, but Khalil and Walker were not given any of the tables. When Khalil asked again if they could share the tables, Acosta screamed, "Don't worry about anything else, just worry about your station. That's it!" Khalil and Walker served only 12 customers that night, whereas the other team in the same room served approximately 30 customers.

- On June 27, 2008, Walker and LaHoff had four tables and only 10 customers all night. Sarko and Manny, who worked the six tables next to Walker and LaHoff but were also assigned outdoor tables, had approximately 51 customers. Walker and LaHoff asked to alternate waiting on the outdoor tables, but Sarko and Manny responded that Acosta said the tables were theirs.

16. In general, since the FLSA Lawsuit was filed, plaintiffs have been earning only approximately 30% to 40% of the tips that non-plaintiff waiters are earning.

17. Since the filing of the FLSA Lawsuit, Old Homestead Management has encouraged waiters who did not participate in the FLSA Lawsuit to make plaintiffs' working conditions uncomfortable, and as a result plaintiffs have been taunted, jostled, and harassed by waiters who did not participate in the FLSA Lawsuit.

18. In addition to reducing plaintiffs' income, since the filing of the FLSA Lawsuit, defendants also have harassed and intimidated the plaintiffs in an effort to either provoke them until they break a rule and can be terminated, or to encourage the plaintiffs to quit their jobs at Old Homestead. In other words, Old Homestead has been trying to "set up" plaintiffs. Plaintiffs also have been criticized, scrutinized, and unfairly disciplined for conduct that other waiters were not disciplined for.

4

19. General Manager Acosta has been verbally abusive to plaintiffs as a result of their participation in the FLSA Lawsuit. Acosta commented to Walker, LaHoff, and Khalil, on various occasions since the filing of the lawsuit, that he does not know why they are still working at the Old Homestead and they should go work somewhere else. On other occasions, Acosta said to Khalil, "Go fuck yourself!" On another occasion, Acosta said to the kitchen manager in a stage whisper, "Be careful, very bad people are working here. They might sue."

20. Old Homestead Management has taken every opportunity to "stick it" to plaintiffs. For example, on December 31, 2007, Old Homestead scheduled Khalil to work the dinner shift on New Year's Eve while giving more junior waiters the holiday off. This happened even though it was a Monday, Khalil's regular day off since being hired at Old Homestead in 1980. Khalil had not worked on New Year's Eve in approximately 10 years, when the restaurant began staffing this holiday dinner shift according to seniority.

21. On May 8, 2008, the plaintiffs obtained a judgment in the FLSA Lawsuit against defendants in the amount of $36,000, plus costs and attorneys' fees. Since judgment was taken against Old Homestead in the FLSA Lawsuit, the retaliation against plaintiffs has continued unabated.

22. In addition to the FLSA Lawsuit, plaintiffs had filed a grievance with their union, Local 100 UNITE HERE!. The grievance was taken to arbitration, and lost, by Local 100. Notably, plaintiffs' own counsel was not able to actively participate in the proceeding and Local 100 did a perfunctory job in prosecuting the case. Not surprisingly, by decision dated May 19, 2008, the arbitrator found that Old Homestead had not violated the collective bargaining agreement between Old Homestead and Local 100.

23. On May 20, 2008, Marc Sherry convened the employees at Old Homestead for a special meeting. Marc Sherry began the meeting by announcing that the "Three Stooges" (i.e. plaintiffs) had "lost" the arbitration that was filed by Local 100, and lambasted them for causing "stress" in the restaurant. Marc Sherry distributed copies of the arbitration decision to several people, and had Office Manager Carol Troche read the last page aloud to the group. Marc Sherry told the Old Homestead employees that the plaintiffs owed everybody an "apology" and then said that he was going to leave the plaintiffs alone with the other employees for fifteen minutes. Marc Sherry left the room, so that Khalil and LaHoff would be left alone with the remainder of the Old Homestead employees. (Walker was not present because it was his day off.) Acosta screamed in Khalil's face, "You are nobody, you are the worst piece of shit in the world. You created a lot of problems." The other employees badgered Khalil and LaHoff to "apologize" for their actions.

24. For the dinner shift the evening of the May 20, 2008 meeting, Khalil and LaHoff worked together, and Old Homestead sent them a message. Although the restaurant was busy with constant turnover in the other waiters' sections, Khalil and LaHoff's first table was not seated until 9:09 p.m., whereas the other waiters had tables seated shortly after the meeting ended at 5:25 p.m. Over the course of the night, Khalil and LaHoff had a total of only six customers, taking home a total of $25 each in tips. In contrast, the other two-waiter teams averaged 20-25 customers.

25. On June 12, 2008, Marc and Gregory Sherry held a meeting with Khalil and Walker at which they encouraged Khalil and Walker to leave Old Homestead. (LaHoff was on vacation.) In the presence of their Local 100 Representative Dennis Diaz, Marc and Greg Sherry presented a nominal severance package. The Sherrys suggested that Khalil and Walker look for employment in a different field or continue

as waiters at what Marc Sherry described as another restaurant where they might make more money or feel more comfortable. Marc Sherry said, "it hasn't been a piece of cake here" and suggested that they should look at working at another restaurant where there would be less tension. At the meeting, Marc Sherry also warned Khalil and Walker that if they contacted a private lawyer before going through the full union grievance process, they would be disciplined. That night, Walker was given only two customers, seated at 8:10 p.m. Khalil, working with a non-plaintiff waiter, received only five customers, the first of whom was a single man seated at 7:40. The rest of the restaurant was full and other teams of waiters served approximately 20-25 customers apiece. The message of Old Homestead was again crystal clear -- if plaintiffs continued to work at Old Homestead, they would not be allowed to make a decent living.

## FIRST CLAIM
### Fair Labor Standards Act - Retaliation

26. Plaintiffs repeat and reallege paragraphs 1 through 25 as if fully set forth herein.

27. Defendants have wilfully violated the anti-retaliation provisions of the FLSA, which prohibit "any person" from "discharging or in any other manner discriminating against an employee because that employee has engaged in protected conduct." 29 U.S.C. § 215(a)(3).

28. Walker, Khalil, and LaHoff are "employees" within the meaning of 29 U.S.C. §§ 203(a) and 215(a)(3).

29. Defendants Marc Sherry, Gregory Sherry, and Acosta are "persons" within the meaning of 29 U.S.C. §§ 203(e)(1) and 215(a)(3), subject to individual liability for retaliatory conduct.

30. Plaintiffs engaged in "protected conduct" by filing and participating in the FLSA Lawsuit against Old Homestead.

31. By the acts described herein, and other acts, defendants have harassed, abused, and reduced the income of Walker, Khalil, and LaHoff, and otherwise discriminated against plaintiffs as a result of their participation in the FLSA lawsuit.

## SECOND CLAIM
### New York Labor Law – Retaliation

32. Plaintiffs repeat and reallege paragraphs 1 through 31 as if fully set forth herein.

33. Defendants have wilfully violated NYLL § 215, which states, "no employer or his agent ... shall discharge, penalize or in any other manner discriminate against any employee because such employee has ... caused to be instituted a proceeding."

34. Walker, Khalil, and LaHoff are "employees" within the meaning of NYLL §§ 2(5) and 215(1).

35. Defendants Marc Sherry, Gregory Sherry, and Acosta are "employers" and "agents" within the meaning of the NYLL.

36. Plaintiffs engaged in protected conduct by filing and participating in the FLSA Lawsuit against Old Homestead.

37. By the acts described herein, and other acts, defendants have harassed, abused, and reduced the income of Walker, Khalil, and LaHoff, and otherwise discriminated against plaintiffs as a result of their participation in the FLSA Lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter a judgment:

    a. enjoining defendants from harassing, intimidating, and threatening Old Homestead employees because they have exercised their rights under the FLSA and the NYLL;

  b. declaring that defendants have violated anti-retaliation provisions of the FLSA and the NYLL as to plaintiffs;

  c. awarding plaintiffs backpay for lost wages;

  d. awarding plaintiffs liquidated damages;

  e. awarding plaintiffs prejudgment interest;

  f. awarding plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and NYLL;

  g. directing defendants to pay plaintiffs compensatory damages for mental anguish, emotional distress, and humiliation;

  h. directing defendants to pay plaintiffs punitive damages on account of defendants' intentional disregard of and reckless indifference to plaintiffs' rights; and

  i. providing such other and further relief as the Court deems proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury in this action.

Dated: New York, New York
   July 3, 2008

              BERKE-WEISS & PECHMAN LLP

      By: _____
          Louis Pechman (LP - 6395)
          488 Madison Avenue - 11th Floor
          New York, New York 10022
          (212) 583-9500
          *Attorneys for Plaintiffs*